# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JONATHAN D. YORK (#515292)**

**VERSUS**

**DARREL VANNOY**

**CIVIL ACTION**

**NO. 18-797-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on November 4, 2020.

_____

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JONATHAN D. YORK (#515292)**

**CIVIL ACTION**

**VERSUS**

**NO. 18-797-JWD-RLB**

**DARREL VANNOY**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Petitioner's application should be denied. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Jonathan York, challenges his convictions of second degree murder and felon in possession of a firearm, entered in 2012 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana. On August 28, 2018, the petitioner filed a petition for a writ of habeas corpus contending he was denied effective assistance of counsel because his trial counsel failed to investigate his alibi defense, failed to interview critical eye witnesses, failed to investigate the state's case, and failed to seek a continuance in order to pursue an investigation.

### Procedural History

After a trial by jury conducted in December of 2012, the petitioner was found guilty of second degree murder and felon in possession of a firearm. On January 11, 2013 the petitioner was sentenced life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[1] The petitioner thereafter appealed his conviction to the Louisiana First Circuit

---

[1] The petitioner was also sentenced to 15 years on the felon in possession of a firearm charge, to run concurrently with the life sentence.

Court of Appeal ("First Circuit"), asserting insufficient evidence to support the convictions, error

of the trial court in refusing to sever the offenses, his trial counsel labored under an actual

conflict of interest, the trial record was incomplete, prosecutorial misconduct, and erroneous

admission of hearsay testimony. On March 24, 2014, the First Circuit affirmed petitioner's

convictions and sentences. *State v. York*, 2013-15929 (La. App. 1 Cir. 3/24/14), 2014 WL

1203207. The petitioner appealed the First Circuit's ruling affirming his convictions to the

Louisiana Supreme Court, which denied review on April 17, 2015.

On or about June 21, 2016, the petitioner filed an application for post-conviction relief in

the Nineteenth Judicial District Court asserting he was denied effective assistance of counsel

because his trial counsel failed to investigate his alibi defense, failed to interview critical eye

witnesses, failed to investigate the state's case, and failed to seek a continuance in order to

pursue an investigation.

On or about August 28, 2018, the petitioner filed the instant application for habeas corpus

relief in this Court.

## Factual Background

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court

of Appeal[2] are as follows: Michael Louis Johnese testified he was the father of the victim,

Shantell Johnese. On April 1, 2011, Michael Johnese was working in his neighborhood in Baton

Rouge doing lawn maintenance. According to Johnese, he learned that the victim and the

petitioner had a "beef" or argument with each other, and approached the petitioner and his

brother, who were in the petitioner's mother's red car, and told the petitioner that they needed to

---

[2] *State v. York*, 2013-15929 (La. App. 1 Cir. 3/24/14), 2014 WL 1203207.

talk. Michael Johnese testified the petitioner was a passenger in the vehicle. Approximately

twenty to twenty-five minutes later, Michael Johnese heard a shot ring out. He rushed back to

where he had left the victim, and she told him, "he shooting at me." Johnese asked the victim

who was shooting at her, and she replied, "John." Johnese indicated the victim identified her

assailant by the names "Jonathan" and "Juvenile," and the petitioner's nickname was "Juvenile."

Michael Johnese went to look for the petitioner, but approximately four to six minutes later, he

heard at least five additional shots ring out and rushed back to the victim again. The victim had

suffered five gunshot wounds, including a fatal wound to her left side. Michael Johnese

indicated, prior to the incident, he considered the petitioner his very good friend, had worked on

cars with him, and had given him advice. Michael Johnese also testified the petitioner had a

birthmark over his eye.

Sherwood Gaines testified that on April 1, 2011 he travelled from the store to the victim's

house, and the victim asked him if he had seen "Juvenile." Gaines replied he had seen the

defendant down by the petitioner's house. According to Gaines, approximately ten minutes later,

the petitioner drove up the street in a red car and shot the victim four or five times. Gaines

testified he saw the defendant from a distance of approximately twenty feet, at 2:00 p.m. or 2:30

p.m., and was familiar with him because they "used to hang together a while back."

While investigating the offense, the police found a red vehicle, belonging to the

petitioner's mother, at her home, approximately one block from the crime scene. A .40 caliber

shell casing was located in the area of the passenger-side windshield wiper. Subsequent analysis

indicated the shell casing matched shell casings found at the crime scene. Additionally, in a

4

recorded telephone conversation from prison, the petitioner stated, "shit bad, forty shell, windshield, missed it."

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying

factual issues are presumed to be correct, and the petitioner has the burden to rebut that

presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Substantive Review

### *Ineffective Assistance of Counsel*

To establish that his legal representation at trial fell short of the assistance guaranteed by

the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the

Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that

his counsel's performance was both deficient (that counsel did not provide reasonably effective

assistance under prevailing professional norms) and prejudicial (that errors by counsel "actually

had an adverse effect on the defense"). *See Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir.

1994) (citing *Strickland*, 466 U.S. at 686-89, 693). The former component of the test authorizes

only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption

that, under the circumstances, the challenged action might be considered sound trial strategy. *See*

*Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 689). As to the latter component, it is

not enough for the defendant to show that the errors had some conceivable effect on the outcome

of the proceeding. Rather, the defendant must demonstrate a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. *See*

*Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 693).

A court considering a claim of ineffective assistance must apply a strong presumption

that counsel's representation was within the wide range of reasonable professional assistance.

*See Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689). The

challenger's burden is to show that counsel made errors so serious that counsel was not

6

functioning as the counsel guaranteed by the Sixth Amendment. *See Richter*, 562 U.S. at 104

(*citing Strickland*, 466 U.S. at 687).

### *(1A) Failure to Investigate/ Failure to Call Alibi Witness, Quentin McCall*

In Claim 1A, the petitioner contends that he was denied the right to effective assistance of

counsel because his trial counsel failed to investigate his alibi defense and failed to call alibi

witness, Quentin McCall as a witness at trial. The petitioner claims that he advised his trial

counsel that he had an alibi witness, Quentin McCall. According to the petitioner, McCall would

have testified that the petitioner was at his house at the time of the murder. The respondents

argue that counsel's election to not call a particular witness is a matter of trial strategy. The

respondents also argue that evidence was presented at trial showing that the petitioner's cell

phone was active at the time of the murder in the Valley Park area, where the murder occurred.

In her opinion dismissing the petitioner's application for post-conviction relief, the

Commissioner at the Nineteenth Judicial District Court found:

> Petitioner alleges that his counsel's failure to talk to and/or subpoena his
> alibi witness, Quinton McCall, caused him to be prejudiced at trial. Petitioner
> alleges that Mr. McCall was an eyewitness who could have told the jury that
> Petitioner was at McCall's house during the time the incident occurred. Petitioner
> argues that it was his advocate's duty to at least investigate his alibi which would
> have confirmed that Petitioner was at McCall's house with McCall until 6:00 in the
> evening and thus could not have committed the crime. Petitioner contends that he
> told his counsel where he was and that he was "at odds" with the victim's family,
> implying that they were setting him up to take the blame. Specifically, that the
> victim's father told police that their friend, Sherwood Gaines, who, Petitioner
> claims is a "crack-head," was willing to implicate Petitioner as the shooter.
> Petitioner argues that had McCall been subpoenaed and taken the stand, he would
> have been able to tell the jury that during the time of the incident Petitioner was at
> his house. He also contends that an investigation would have confirmed that
> McCall's grandmother saw him arrive and leave and in fact, kissed him good-by
> when he left their premises. He asserts that this proves that his counsel was
> ineffective in not interviewing and pursuing his only viable line of defense.

7

The State points out that when Petitioner was arrested he told the police that he could not have done the shooting because he was at McCall's house located "at Foster and. Shelley Street" and nowhere near Valley Street. As such, his counsel was aware of his potential alibi. For reasons not apparent from the record, McCall was not called as a witness. However, despite submitted affidavits to the contrary, McCall's testimony is unsubstantiated. Citing *Schwander v. Blackburn,* 750 F.2d 494 (5th Cir. 1985), the State argues that "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. When, however, the only evidence of a missing witness's testimony is from the defendant, the Court views claims of ineffective assistance of counsel with great caution." Consequently, the State argues that the failure to call upon Mr. McCall to substantiate Petitioner's alibi was obviously a trial strategy and not a mere oversight. Moreover, Petitioner's cell phone was active at the time of the murder, and his phone was supported by the telephone tower in the Valley Park area where the murder took place at 2256 Valley Street and not at the site of the alleged alibi.

This Commissioner agrees with the State. As well settled in *Strickland,* hindsight is not the proper perspective for judging the competence of counsel's trial decisions, and an attorney's level of representation may not be determined by whether a particular strategy is successful. The record shows that Petitioner's counsels were keenly aware of Petitioner's potential alibi but chose to not utilize Mr. McCall for whatever reason. There was evidence that at the exact time of the shooting, Petitioner's active cell phone placed him in the vicinity of the shooting and not at the site of his purported alibi. Therefore, in this Commissioner's opinion, Petitioner has not met his burden to show that his counsels were constitutionally deficient in not calling upon Mr. McCall to testify on Petitioner's behalf.

The record demonstrates that counsel's trial strategy was to show that the state failed to meet its burden of proof and the state's key witness lacked credibility. Considering the cell phone record evidence, counsel's decision not to call Quentin McCall as an alibi witness falls within the ambit of sound professional judgment, as McCall's testimony risked the credibility of the defense. The petitioner has not shown that his attorney did not provide reasonably effective assistance under prevailing professional norms by failing to call Quentin McCall as an alibi witness. The state court's decision dismissing Claim 1A is neither contrary to, nor an unreasonable application of federal law.

8

Because counsel's performance was not deficient, it is not necessary to consider whether the challenged decision undermines confidence in the outcome of the petitioner's trial. However, the Court observes that the petitioner's claim that McCall's testimony would have resulted in an acquittal falls short of satisfying *Strickland's* prejudice element. The state presented overwhelming evidence of guilt at trial, including the victim's statement that the petitioner was the shooter, Sherwood Gaines' testimony that he saw the petitioner commit the murder, the matching bullet casing found on the petitioner's mother's vehicle, and the petitioner's own statement in the jail call that he "missed" the bullet casing on the vehicle. Accordingly, there is no basis for concluding that Quentin McCall's questionable testimony would have resulted in a different outcome.

### (1B) Failure to Interview Witnesses, Dominick York and Dontrell Hardnett

In claim 1B, the petitioner contends that he received ineffective assistance of counsel because his trial counsel failed to interview Dominick York and Dontrell Hardnett. According to the petitioner, Dominick York was actually the speaker on the jail phone call who said ".40 cal windshield, missed one." The petitioner's application for post-conviction relief contained an affidavit from Dominick York attesting that he said, "missed one 40 cal windshield."[3] The respondents argue that Dominick York's affidavit was executed nearly five years after the murder and the jail call contradicts Dominick York's testimony, as it is clear that the caller made the statement about the casing on the windshield.

The petitioner's only mention of Dontrell Hardnett in his habeas petition refers to Hardnett as an eyewitness who made the 911 call. However, the petitioner's application for post-

---

[3] R. Doc. 20-1, p. 33.

conviction relief contained an affidavit from Dontrell Hardnett attesting that he saw the shooter

driving a red Chevrolet Cavalier and that Jonathan York was not the shooter.[4] The respondents

argue that the 911 call was not in evidence and Hardnett's name does not appear in any of the

police reports in the record. The respondents also contend that Hardnett's affidavit is contrary to

the petitioner's statement to the police when he said that he heard that the shooter was driving a

red vehicle, like the one his mother owns (a red Honda Civic).

Addressing this claim in the petitioner's post-conviction relief proceedings, the

Commissioner at the Nineteenth Judicial District Court found:

### Failure to call Dominic York

Petitioner contends that his brother Dominic should have been called as a witness. Had he been called he would have told the jury that it was he who threw the shell casings that were in the street in front of his mother's house into an empty lot where his mother's red Honda was parked. Petitioner also argues that the recorded phone call played for the jury was a reference to his mother's house being shot at again.

The State points out that, had Dominic testified to that scenario it would have undermined Petitioner's entire case which was based upon a theory of defense that people in the neighborhood were trying to frame him for the murder by placing the casing on the vehicle's windshield. Petitioner continued to maintain this stance from the time he was arrested.

This Commissioner again agrees with the State. Petitioner's counsel was aware of Dominic's statement and simply chose to not have him testify. As expressed in *Strickland,* hindsight is not the proper perspective for judging the competence of counsel's trial decisions, and an attorney's level of representation may not be determined by whether a particular strategy is successful. In a recent case, the Fourth Circuit Court of Appeal stated that in reviewing the deficiency, "[W]e do not sit to second-guess strategic and tactical choices made by trial counsel, and must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... ." *State v. Jenkins,* 14 KA 1148 (La. App. 4 Cir. 5/6/15), 172 80.3d 27. Accordingly, Petitioner has failed to show that his counsel was constitutionally deficient in not calling his brother to testify.

---

[4] R. Doc. 20-1, p. 35.

**Failure to call Dontrell Hartnett**

Petitioner alleges that had his counsel investigated Mr. Hartnett he would have had direct testimony to discredit Sherwood Gaines' testimony. Petitioner said that Gaines claimed to see Petitioner shoot the victim six or seven times. Dontrell Hartnett's Affidavit says he saw the person who shot the victim and it was not Petitioner.

The State explains that Hartnett is the person who called the police. In his Affidavit, he claims that the shooter was driving a red Chevy Cavalier and not a red Honda Civic. The State points out that no place in the record is there mention of a Chevy Cavalier. Also, to the contrary, Jonathan York himself, when questioned by the police, stated that "he heard a red vehicle, like the one his mother owns, was seen driving up Valley Street and the driver of this car 'shot' Johnese." (R. Vol. 1 p. 94).

Furthermore, the State maintains that a careful review of the evidence presented at trial will show that Petitioner was not prejudiced by his counsels' failure to investigate and/or call the witnesses. I agree that Petitioner was not prejudiced by his counsel's failure to call these witnesses. The testimony at trial is as follows:

The victim's father testified that he had lunch with his daughter in the Valley Park area. After lunch he heard shots and his daughter told him that Jonathan had been shooting at her from his car. (R. Vol III pp. 465). His daughter told him she was going to hide out at her aunt's house and Mr. Johnese left to go look for Petitioner to talk to him. (R. Vol III pp. 466-489). Mr. Johnese heard more shots. (R. Vol III, 489). About twenty minutes before he heard the first shots fired he saw Petitioner riding in the area in his mother's small red car. (R. Vol. Ill pp. 490). Detective Chris Rudy testified that following the shooting, calls began to come into "Crime-stoppers" identifying Jonathan York as being involved in the murder and also identifying him as "Juvey" or "Juvenile." (R. Vol. Ill p. 541). Tips continued to come in about the perpetrator driving a small red car. (R. Vol. III p. 540-41).

On April 2, 2011, police located a red vehicle within a block of the crime scene parked at Claudette York's house. Mrs. York is Petitioner's mother. Resting on the hood of the car was a .40 caliber shell casing which matched the casings found at the murder scene. (R. Vol. III pp. 541- 549). A recorded telephone conversation from Petitioner at the jail to his brother, discussed the fact that a shell casing found on the windshield had been missed. (R. Vol. Ill pp. 558-560).

A homeless man, Sherwood Gaines, was arrested because he did not want to testify. When apprehended he said that the victim called him over while he was

11

walking from the store and she asked if he had seen "Juvenile." He said he told her he had seen him and that she seemed nervous, (R. Vol IV pp. 630-31). He said about ten minutes later he saw "Juvenile" drive by in a small red car, come to a stop in front of the house where Shantell was standing and started shooting at her. (R. Vol. IV. Pp. 631-650). Gaines said Petitioner was the shooter in two different police interviews and picked him out of a photo lineup.

It is well-settled, that strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. I n any ineffectiveness case, a particular decision not to investigate or to subpoena a witness must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Strickland v. Washington*, 466 U.S. at 690-691, S.Ct. at 2066. Accordingly, under the tenets of *Strickland,* these claims of ineffective trial counsels should be dismissed. Petitioner has not met his burden to show that his counsels were constitutionally ineffective or that he was prejudiced by their representation.[5]

The trial court's opinion dismissing this claim is neither contrary to nor an unreasonable application of federal law. The record does not clearly establish the reasons the petitioner's trial counsel chose not call Dominick York or Dontrell Hardnett as trial witnesses. In any event, the petitioner cannot meet the prejudice prong of the *Strickland* standard, given the overwhelming evidence of guilt presented at trial as outlined by the Commissioner. The petitioner cannot demonstrate that but for his counsel's failure to call Dominick York he would not have been convicted. Even if Dominick York had testified that he made the comment about the bullet casing on the jail call, this testimony would not have exculpated the petitioner given the testimony that the victim and eyewitness, Sherwood Gaines, identified the petitioner as the shooter and the bullet casing on the petitioner's mother's car matched the bullet casings found at the scene of the murder.

The petitioner also cannot demonstrate that but for his counsel's failure to call Dontrell Hardnett he would not have been convicted. Sherwood Gaines' identification of the petitioner as

---

[5] R. Doc. 13-1, pp. 26-29.

the shooter was corroborated by the testimony that the victim also identified the petitioner as the

shooter. Additionally, the .40 caliber bullet casing found on the windshield of the vehicle that

petitioner was seen driving shortly before the murder matched the bullet casings found at the

scene of the murder. Thus, Claim 1B is without merit and should be dismissed.

### (1C) Failure to Investigate the State's Case

Next, the petitioner contends that his counsel failed to adequately investigate the state's

case. Specifically, the petitioner contends that his counsel failed to interview eye-witness

Sherwood Gaines and failed to interview Dontrell Hardnett, who made the 911 call. The

respondents argue that the petitioner has failed to show that Sherwood Gaines was willing to be

interviewed by his counsel, pointing out that the prosecution obtained a material witness warrant

to secure Gaines' testimony at trial. The respondents also argue that the petitioner has failed to

show exactly how an interview of Gaines would have benefited the defense. Furthermore, The

respondents argue that the petitioner's counsel adequately cross-examined Gaines at trial.[6]

"[A]n attorney must engage in a reasonable amount of pretrial investigation and 'at a

minimum, ... interview potential witnesses and ... make an independent investigation of the facts

and circumstances in the case....'" *Harrison v. Quarterman*, 496 F.3d 419, 425 (5th Cir. 2007),

*quoting Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). However, an applicant "who alleges

a failure to investigate on the part of his counsel must allege with specificity what the

investigation would have revealed and how it would have altered the outcome of the trial."

---

[6] The petitioner did not present this claim at the trial court stage of his application for post-conviction relief. He did, however, argue it in his brief to the Louisiana Supreme Court (R. Doc. 13-1, pp.7, 11-12). The Louisiana Supreme Court ruling generally stated that the petitioner failed to meet the *Strickland* standard. For this reason, the respondents have not taken the position that the claim is unexhausted (R. Doc. 11, p.15). Accordingly, the Court will assume, without deciding, that this claim is exhausted.

*Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010), *quoting United States v. Green.* 882 F.2d 999, 1003 (5th Cir. 1989).

The petitioner has failed to allege with any specificity what information his counsel would have learned by interviewing Sherwood Gaines and how that information would have changed the outcome of his trial. The record reflects that the petitioner's trial counsel sufficiently cross-examined Gaines, eliciting testimony to support the defense theory that the petitioner was being framed, including testimony that Gaines was like a father-figure to his nephew,[7] his nephew and the petitioner were "beefing" or fighting with each other,[8] and if Gaines had to chose a side in the fight he would chose his nephew.[9] Counsel also elicited testimony on cross-examination challenging Gaines' credibility, including testimony that Gaines was an active drug user,[10] he sold drugs to the victim,[11] he was arrested multiple times and has multiple convictions on his record,[12] and law enforcement and the victim's family pressured him into making a statement.[13]

Additionally, under Louisiana law, "a witness is free to choose whether he or she speaks with opposing counsel and that determination shall be made by the witness alone." *State v. Casey*, 1999-0023 (La. 1/26/00), 775 So.2d 1022. The petitioner has failed to show that Sherwood Gaines was amenable to speaking with his counsel. As pointed out by respondents, the

---

[7] R. Doc. 12-3, p. 127.
[8] R. Doc. 12-3, p. 127.
[9] R. Doc. 12-3, p. 129-130.
[10] R. Doc. 12-3, p. 131.
[11] R. Doc. 12-3, p. 139.
[12] R. Doc. 12-3, p. 130-131.
[13] R. Doc. 12-3, p. 138.

prosecution had to obtain a material witness warrant to secure Gaines' trial testimony. Also,

Gaines acknowledged in his trial testimony that he did not want to be involved in the trial.[14]

The petitioner's speculative claim that counsel could have spoken to Gaines and might

have learned information helpful to his case fails to meet the *Strickland* standard. While Dontrell

Hardnett's proposed statement is more than speculative because he provided the petitioner with

an affidavit, the petitioner's claim that his counsel failed to interview him also fails to meet the

*Strickland* standard. The petitioner cannot establish he suffered any prejudice from these alleged

failures by counsel due to the overwhelming evidence of his guilt presented at trial. Thus, Claim

1C is without merit and should be dismissed.

### (1D) *Failure to Seek a Continuance to Investigate the State's Case*

Lastly, the petitioner contends that he received ineffective assistance of counsel because

his counsel should have asked for a continuance to investigate the case. The respondents argue

that the petitioner's trial counsel obviously did not see a need for a continuance and provided

adequate representation of the petitioner.[15] Although the petitioner makes cursory allegations that

he was prejudiced by trial counsel's failure to seek a continuance, he does not identify any

specific information that might have been uncovered during additional investigation. To the

extent the petitioner is arguing that a continuance would have yielded the same information

discussed above with respect to Quentin McCall, Dominick York, Dontrell Hardnett, the claim

also fails. As discussed at length above, the failure to obtain the supposed testimony of these

---

[14] R. Doc. 12-3, pp. 132, 137.

[15] The petitioner also did not present this claim at the trial court stage of his application for post-conviction relief. He did, however, argue it in his brief to the Louisiana Supreme Court (R. Doc. 13-1, pp.7, 13-18). The Louisiana Supreme Court ruling generally stated that the petitioner failed to meet the *Strickland* standard. For this reason, the respondents have not taken the position that the claim is unexhausted (R. Doc. 11, p.15). Accordingly, the Court will assume, without deciding, that this claim is exhausted.

witnesses does not amount to prejudice considering the overwhelming evidence of guilt.

Accordingly, Claim 1D is without merit and should be dismissed.

**Certificate of Appealability**

Should the petitioner pursue an appeal, a certificate of appealability should also be

denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus

proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. §

2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may

address whether she would be entitled to a certificate of appealability. *See Alexander v. Johnson*,

211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas

petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §

2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive

grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district

court's resolution of his constitutional claims or that jurists could conclude the issues presented

are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787

(5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the

Court finds that reasonable jurists would not debate the denial of petitioner's application or the

correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the

petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## <u>RECOMMENDATION</u>

It is recommended that the petitioner's application for habeas corpus relief be denied, and

that this proceeding be dismissed. It is further recommended that in the event the petitioner

pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on November 4, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

17